UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,      CRIMINAL NUMBER 2:09-CR-20549

               Plaintiff,      HONORABLE DENISE PAGE HOOD

v.      MAGISTRATE JUDGE R. STEVEN WHALEN

D-2  MOHAMMAD ABDUL BASSIR,
      a.k.a. Franklin D. Roosevelt Williams,

D-3  MUHAMMAD ABDUL SALAAM,
      a.k.a. Gregory Stone,
      a.k.a. Gregory Strong,
      a.k.a. Norman Shields,
      a.k.a. Douglas Shields,
      a.k.a. Gun Man,

D-4  ABDUL SABOOR,
      a.k.a. Dwayne Edward Davis,

D-5  MUJAHID CARSWELL,
      a.k.a. Mujahid Abdullah,

D-6  ABDULLAH BEARD,
      a.k.a. Detric Lamont Driver,

D-7  MOHAMMAD AL-SAHLI,
      a.k.a. Mohammad Philistine,
      a.k.a. Mohammad Palestine,

D-8  YASSIR ALI KHAN,

D-9  ADAM HUSSAIN IBRAHEEM,

D-10  GARRY LAVERNE PORTER,

D-11  ALI ABDUL RAQIB,

D-12  ACIE PUSHA,
      a.k.a. Hanif,

               Defendants.

_____/

**GOVERNMENT'S MEMORANDUM IN SUPPORT
OF PROTECTIVE ORDER RELATING TO DISCOVERY MATERIALS**

The United States of America, through its undersigned counsel, submits this Memorandum of Facts and Law in support of imposition of a Protective Order requiring defense counsel to maintain custody and control of the discovery – including audio and videotapes and photographs – in order to protect the lives and safety of cooperating private citizens (Confidential Human Sources) and FBI Undercover Employees.  Six of nine defense attorneys have agreed to be bound by the provisions of the order; three attorneys have refused.

### Current Charges and Bond Status of Defendants

Eleven defendants are presently indicted.  Ten defendants – Mohammad Abdul Bassir (D-2), Muhammad Abdul Salaam (D-3), Abdul Saboor (D-4), Mujahid Carswell (D-5), Abdullah Beard (D-6), Mohammad Al-Sahli (D-7), Yassir Ali Khan (D-8), Adam Hussain Ibraheem (D-9), Ali Abdul Raqib (D-11) and Acie Pusha (D-12) – are charged in **Count 1** with Conspiracy to Commit Federal Crimes.  The indictment alleges that these ten defendants conspired and agreed to steal goods valued over $5,000 that had been shipped in interstate commerce, in violation of 18 U.S.C. § 2315.

In addition, defendant Bassir (D-2) is charged in **Counts 2, 3, 4, 5 and 6** with firearms-related offenses; defendant Garry Laverne Porter (D-10) is charged in **Counts 7 and 8** with being a felon in possession of firearms; defendant Salaam (D-3) is charged in **Counts 9 and 10** with being a felon in possession of firearms; and defendants Bassir and Pusha (D-12) are charged in **Count 11** with tampering with VINs and aiding and abetting.

Two of the defendants, Mohammad Al-Sahli (D-7) and Yassir Ali Khan (D-8), have not yet been arraigned on the indictment.  They are in Canada, and upon information and belief, they have each posted cash bonds ($300,000 and $260,000 respectively) with Canadian authorities. They remain at liberty pending extradition hearings.

Five defendants are on personal bond.  Defendants Salaam (D-3) and Beard (D-6) were ordered detained pending trial following hearings.  Defendants Bassir (D-2) and Ibraheem (D-9) consented to federal detention because they would otherwise be held in custody on state charges.

### Rule 16 Permits the Court to Regulate Discovery
### to Protect Witnesses from Physical Harm

Rule 16 provides in pertinent part:

> **(d)    Regulating Discovery.**
>
> **(1)    Protective and Modifying Orders.**  At any time the court may, for good cause, deny, restrict, or defer discover or inspection, or grant other appropriate relief.

The Rules Advisory Committee specifically designed Rule 16(d)(1) to provide a mechanism to protect witness safety, and granted considerable discretion to the District Court in drafting orders under that rule.  As the Advisory Committee Note (1974 Amendment) to Rule 16 states:

> Subdivision (d)(1) deals with the protective order.  Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed.  See *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).  . . . [In] *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).  . the court points out that there may be appropriate occasions for the trial judge to decide questions relating to pretrial disclosure.  See *Alderman v. United States,* 394 U.S. at 182 n. 14, 89 S.Ct. 961.

There can be no question in this case that the Confidential Human Sources will be "subject to physical . . . harm" if they are identified and located, as set out below.  The government's proposed order here is completely consistent with Rule 16(d)(1), and with the Advisory Committee Note.

3

## Protective Order:  Terms and Necessity

It is important to note that no defendant has objected to the need for the protective order, and also that the proposed order does not involve keeping any information from the defendants at all.  Instead, defendants' objections are to the proposed restrictions on any distribution of the discovery material.  The United States is not refusing to disclose any information to defendants, or asking that defense counsel not share the discovery with their respective clients.  Instead, it is a very limited, reasonable request, that copies of this sensitive information not be recklessly distributed such that they will further jeopardize the safety of the already threatened witnesses.

Six of the nine defense attorneys in this matter have consented to all the terms of the Protective Order regarding their handling of discovery provided by the government.  Three attorneys – counsel for Mohammad Abdul Salaam (D-3), for Abdullah Beard (D-6), and for Adam Ibraheem (D-9) –  have declined to stipulate, maintaining that the provision of the order that requires them to maintain control of the originals and any working copies of the discovery they may make is unduly burdensome.

The government submits that terms of the Protective Order the government proposed are very reasonable and straightforward.  **It is the least restrictive means available to provide discovery while safeguarding the lives of the Confidential Human Sources, and protecting the safety and anonymity of the FBI Undercover Employees.**  The Protective Order provides only that defense counsel will maintain physical control of the discovery once they receive it, and they will make certain that it is not copied or distributed.  In return for defense counsels' assurances that the audio and videotapes and other materials will not make their way onto YouTube or into some other public forum, the government has already begun providing discovery far in excess of that required by law.

Several Confidential Human Sources have provided information and/or worked proactively in this investigation.  The government is working diligently and in good faith to balance the need to provide discovery with the need to safeguard the lives of the Sources.  The defendants have already determined the identity of one of the Sources, and they have enlisted the aid of members of The Ummah movement throughout the country to try to locate him.  As undersigned counsel indicated in open court, a photograph of the Source standing by Luqman Abdullah has been posted on the worldwide web, along with exhortations to find him, "so that we can talk to him, find out why he betrayed his brothers, and reach some kind of closure."  The web site advises that the Source may have shaved his beard and dyed his hair, so the photo may not be accurate.  Another web posting states that the members of The Ummah should keep the Source "on the left side," an allusion to depictions of the Last Judgment, where the souls of those on the left hand of the one passing judgment are being pulled down into the torments of hell by demons, while the righteous on the right hand are being carried upward toward heaven.

These are not idle threats.  The Court has reviewed the affidavit for the complaint in this case (filed as Criminal number 2:09-mj-30436), which sets out the violent tendencies of the members of this group in some detail.  For example, paragraph 21 on page 6 of the affidavit states:

> On July 21, 2008, S-3 spoke to **[Mohammad] Abdul Bassir**.  Bassir told S-3 that the United States government wants to take people down, and that if the government messes with Luqman Abdullah, "people will start taking heads."

Defendant Bassir's own words illustrate the danger that S-3 faces:  on October 28, 2009, Luqman Abdullah opened fire on the agents who were attempting to arrest him, and Abdullah was killed when the agents returned fire.  Bassir's words, coupled with the exhortations posted on the web,

fully support the government's concerns for the lives and safety of the Confidential Human

Sources in this case.

Further, paragraph 26 on page 9 of the affidavit states:

On February 26, 2008, S-3 went to the Masjid Al Haqq and made a consensual recording of conversations he had with **Luqman Abdullah**, **Muhammad Abdul Salaam**, **Abdul Saboor** and others.  Luqman Abullah spoke to them about the importance of trust; Abdullah stated that it is the people closest to a person who will cause them the most emotional harm when trust is broken:  it is not what the person does to betray him, but **it is who the betrayal came from that is bothersome.  Abdullah also stated that killing a person is one way to handle a person who breaks his trust.**  Abdullah then went into his office and called Abdul Saboor in to meet with him.  When they came out, Abdullah removed a knife from his clothing and handed it to Saboor.  The knife had a blade of approximately five inches in length and the total length with the handle was approximately nine inches.  Saboor began violently swinging the knife in a demonstration of martial arts techniques.  When he finished, Saboor returned the knife to Abdullah and Abdullah put the knife back inside his clothing.

Similarly, paragraph 69 on page 18 of the affidavit states:

On June 19, 2009 while they were in Gainesville, Georgia, S-3 heard Luqman Abdullah tell the Ummah Imam that he knows that somebody in the Masjid Al Haqq is working for the Feds.  .  .  .  Abdullah said that he is hopeful that anyone who is working for the Feds will come to the mosque often to pray, will see the error of his ways, and admit he has been working with the Feds.  Then he will be on the inside.  **Abdullah also said that if somebody is trying to gather information on him, he would kill them himself or have them killed. Abdullah said that he has people who would be happy to handle the problem.**

Having a Source's photograph published on the internet is bad enough; if recordings of his voice,

or videotapes of his mannerisms and way of walking, are also published, there will be no way to

protect him.

FBI Undercover Employees posed as corrupt trucking company employees transporting

the goods that were "stolen" during the ITSP transactions.  As the Court may already be aware,

there are entire web sites devoted to "outing" people who cooperate with the government, or who

work undercover.  If the audio and video recordings of the ITSP transactions are published on the

internet, the images and voices of the Undercover Employees will be broadcast, and their
identities will become known.  These individuals have worked in undercover capacities in many
FBI investigations and in many jurisdictions, and they continue to do so at this time.  They take
great risks every day, as they did in this case.  If they are identified, they will be placed in danger
themselves.  In addition, current and future law enforcement investigations will be jeopardized.

**Protective Order:  Practical Impact**

The government is fully aware of its obligations to provide discovery in accordance with
the provisions of Rule 16 of the Federal Rules of Criminal Procedure and the requirements of
*Brady, Giglio* and the *Jencks* Act, and the government will of course comply fully with those
obligations.

For those attorneys who have agreed to the terms of the Protective Order, the government
is willing – and has already begun – to provide information and materials that far exceed that
which the defendants are entitled to receive.  Included in that production are the recordings of all
consensually obtained conversations and conversations intercepted through Court-authorized
Title III wiretaps, whether or not the specific defendant's statements were recorded; videotapes of
the ITSP transactions and the VIN switching attempts, whether or not the specific defendant's
image was captured; agents' summaries of certain events, which are protected by the work
product doctrine and not discoverable at all; draft transcripts of recorded conversations, whether
or not the recordings will be offered as evidence at trial; and transcripts of most grand jury
testimony.  Production of certain information governed by the *Jencks* Act is being delayed until
such time as the government has determined whether the particular individual(s) will be called to
testify at trial.

For those attorneys who have declined to accept the government's conditions for immediate and generous production, the government will fulfill its discovery obligations according to the letter of the law, and will produce precisely those items of discovery that the law requires in time for their effective use at trial.

In communications to undersigned counsel and again at the pretrial motion hearing on Friday, January 8, 2010, counsel for Abdullah Beard (D-6) stated he will not agree to the terms of the Protective Order because he wants to give his client copies of all the discovery to read and listen to while he is in custody. That is exactly what the government is trying to prevent. Even if one were to assume that defendant Beard has the best of intentions, once copies of the documents and the audio and videotapes are in the prison system, he will lose all control over them.

The Court will recall the case of *United States v. Harden, et al.*, Criminal number 02-80504, that undersigned counsel prosecuted in this forum. The defendants were incarcerated pending trial. The government provided all counsel with copies of FBI 302s and other information as part of the discovery process, and defense counsel gave their clients copies to read in jail. The 302s of a cooperating witness were photocopied and posted throughout her neighborhood like advertising fliers. She was so relentlessly intimidated and harassed that she had to take her child out of school, abandon her house and move out of the state. No one took responsibility for the obstruction, and because the documents had been in the custody of the facility holding the incarcerated defendants, it was impossible to establish individual culpability.

That was eight years ago, in 2002, before the internet was so universally accessible. Had the witness's voice and her image been published on the web along with her statements, simply moving out of state would not have been sufficient to protect her or her daughter. Now, having photographs, audiotapes and videotapes circulate through the prison system and on the internet in

8

this case, would be the functional equivalent of putting a contract out for the Sources, who will certainly be killed if they are identified and located.

### Balancing the Need to Protect Witnesses Against
### the Convenience of Defense Counsel Does Not Violate Equal Protection

Counsel for Abdullah Beard (D-6) also argued at the January 8 hearing that the government's providing immediate and generous discovery to those defendants who have agreed to be bound by the terms of the Protective Order, while providing only the discovery required by law to those who decline to agree, would somehow violate his client's Equal Protection rights. That is incorrect.

The government is making every reasonable effort to comply with its obligations under the law, while keeping the cooperating witnesses alive. Those counsel who refuse to recognize the legitimate concerns stated in this motion, and decline to comply with the very reasonable terms of the Protective Order, will be inconvenienced to some degree. They are appointed and paid by the hour. If they have to spend time reviewing discovery on their own to determine what items to review later with their clients, they will be well compensated for that. They are all experienced attorneys who have reviewed discovery in hundreds of cases, and they will recognize what is relevant to their own client's defense. That is not a violation of Equal Protection.

### CONCLUSION

The terms of the Protective Order are reasonable, and the least restrictive means available to protect the lives of government witnesses and the anonymity of undercover employees. They comport with the terms and legislative intent of Rule 16; they do not violate *Brady, Giglio*, the *Jencks* Act, the Equal Protection Clause of the Constitution of the United States, or any other laws or mandates.

9

The government urges this Honorable Court to order the three attorneys who have declined to stipulate to the terms of the Protective Order – counsel for Mohammad Abdul Salaam (D-3), for Abdullah Beard (D-6), and for Adam Ibraheem (D-9) – to be bound by its terms. Alternatively, the government asks the Court to find that under these circumstances, the government is well within its rights to provide only the discovery required by law to counsel for those three defendants, and to provide it in time for its effective use at trial.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney


 s/ Cynthia Oberg
CYNTHIA OBERG  (P 36338)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9701
cynthia.oberg@usdoj.gov


 s/ Kevin M. Mulcahy
KEVIN M. MULCAHY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9713
kevin.mulcahy@usdoj.gov


Dated: January 13, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Jeffrey L. Edison
Email: jelee@ix.netcom.com

Ray E. Richards
Email: richlaw2000@yahoo.com

Robert F. Kinney , III
Email: rfkinney@sbcglobal.net

Sanford A. Schulman
Email: saschulman@comcast.net

Nabih H. Ayad
Email: ayadlaw@hotmail.com

Joseph A. Niskar
Email: niskarlaw@gmail.com

S. Allen Early , III
Email: sallenearly@sallenearly.comcastbiz.net

Marshall E. Goldberg
Email: megoldberg2003@yahoo.com

Walter J. Piszczatowski
Email: wallyp@hertzschram.com

Anthony T. Chambers
Email: achambers3650@yahoo.com

s/Cynthia Oberg
CYNTHIA OBERG  (P 36338)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9701
Email: cynthia.oberg@usdoj.gov